609 So.2d 66 (1992)
INSTITUTIONAL & SUPERMARKET EQUIPMENT, INC., Appellant,
v.
C & S REFRIGERATION, INC., Jonathan T. Greene, Shari A. Greene and Ray Seay, Appellees.
No. 91-2778.
District Court of Appeal of Florida, Fourth District.
November 18, 1992.
Rehearing Denied December 29, 1992.
*67 Stanley H. Wakshlag of Akerman, Senterfitt & Eidson, Miami, for appellant.
Robert W. Wilkins of Berrocal & Wilkins, P.A., Jupiter, for appellee.
WARNER, Judge.
In this appeal from a final judgment, Appellant claims that the trial court erred in finding appellee Seay not liable on a continuing personal guarantee for debts incurred by Seay's former corporation, C & S Refrigeration, Inc. The trial court found that Seay had terminated his guaranty by constructively delivering a letter of termination to appellant's officer. In addition the court found that appellant had failed to disclose facts concerning the new owners of the corporation which would materially change the risk to Seay, thus negating the guaranty. Appellant claims that these findings overlook the express obligations under the guarantee. We agree and reverse.
Appellant, ISE, is a cooperative which operates in the food and supermarket industry. Members of the cooperative are able to submit purchase orders through the cooperative to receive discounts on equipment through suppliers of the cooperative, using the cooperative's approved credit. In 1983 C & S Refrigeration, wholly owned by Appellee Seay, became a member of ISE and was allowed to purchase equipment through it. Seay was required to sign a "Guarantee of all Liability" contract.
In October of 1989, Seay advised ISE's executive director that he was selling the corporation. The corporation was sold in November, but Seay agreed to stay with C & S for six months as a consultant to help with the transition. There was conflicting testimony as to whether Seay sent a letter terminating the guaranty to the executive director. The trial court found that Seay's daughter "constructively delivered" a letter to ISE's director advising him that Seay was no longer responsible for C & S's debts. The evidence supporting this conclusion was the daughter's testimony that she prepared the letter to hand deliver to the ISE executive director at a convention, and while she could not remember hand delivering the letter, her practice would have been to mail the letter to ISE if she did not deliver it at the convention. The ISE director denied ever receiving the letter.
Almost immediately after the sale, C & S became delinquent with its invoices. In April 1990, ISE learned that C & S attempted to purchase directly from a supplier who refused to extend credit to C & S. At that point, ISE requested and received personal guarantees from the Greenes, the new owners of C & S. ISE did not advise Seay of this development. The trial court found that by failing to inform Seay of the supplier's refusal to extend credit to C & S and ISE's securing additional guarantees from the Greenes, ISE breached its duty to disclose as set forth in Restatement of Security Section 124 and Sumitomo Bank of Cal. v. Iwasaki, 70 Cal.2d 81, 73 Cal. Rptr. 564, 447 P.2d 956 (1968). As a result, the trial court determined that Seay was not liable on the guaranty.
There is no dispute that the subject guarantee is a continuing guaranty. As such, it "covers all transactions, including those arising in the future," which are contemplated by the agreement. Causeway Lumber Co., Inc. v. King, 502 So.2d 80 (Fla. 4th DCA 1987). It is further undisputed that Seay's sale of C & S to the Greenes did not terminate his liability under the guaranty agreement. Kerr-McGee Chemical Corp. v. CHB Farms, Inc., 340 So.2d 483 (Fla. 4th DCA 1976), cert. denied, 348 So.2d 946 (Fla. 1977).
The guaranty provides an express method for termination:
This agreement may be terminated (so far as relates to new obligations of Borrower) only upon written notice to that effect delivered by Guarantor to "ISE" and duly receipted for by it ... (emphasis supplied).
*68 The trial court found that Seay terminated the guaranty by the "constructive delivery" of a letter to ISE, although ISE denied receipt of such a letter. Appellant claims that both delivery and receipt are necessary under the language of the guarantee and that even if a presumption of delivery is allowed, there is no showing of receipt. Appellee claims that receipt is presumed by the testimony of Seay's daughter that the letter was typed, addressed, stamped and mailed. See Brown v. Giffen Industries, Inc., 281 So.2d 897, 900 (Fla. 1973).
Appellee's reasoning, which was followed by the trial court, does not give effect to the contractual language. The contract provides that termination occurs when written notice to that effect is delivered and duly receipted for by ISE. "Receipted" is a verb as used in the foregoing sentence, and it is defined in Webster's New World Dictionary, as "...2. to write a receipt for, as goods, etc." It does not mean the same thing as "received" which is defined merely as "to get, accept, or acquire." The requirements for termination of the guarantee include delivery to ISE and for ISE to write a receipt for the written notice of termination. While the trial court may have found "constructive delivery" to have been proved (a finding we might question but do not given our other analysis), no one has suggested that the latter condition was accomplished.
Where contracts are clear and unambiguous, they should be construed as written, and the court can give it no other meaning. Hamilton Const. Co. v. Board of Public Instruction of Dade County, 65 So.2d 729 (Fla. 1953). Where words of a contract are clear and definite, they must be understood according to their ordinary meaning. Shaw v. Bankers Life Co., 213 So.2d 514 (Fla. 3d DCA 1968). Here the words are definite and must be construed according to their ordinary meaning. Moreover, the reason why ISE may have desired to insert this very language into the guaranty is illustrated by this very case, namely so that there could be no dispute as to whether or not ISE received a notice of termination. By requiring ISE's written receipt of the notice ISE is assured of receiving the notice of termination and could not be caught in a position of extending credit and later having the guarantor charge that it had mailed a letter discharging the guarantee, which ISE never received. By the language of the guaranty, the termination was not effective for failure of ISE to have duly receipted for the written notice of termination. The guarantor of the corporation is not released until the termination provision is complied with. See Sanz v. Professional Underwriters Ins. Agency, 560 So.2d 1254 (Fla. 3d DCA 1990). Here it never was, and the trial court erred in finding that the guaranty was terminated by constructive delivery of the written notice.
The trial court also found that Seay was released from liability under the guaranty by ISE's failure to disclose the supplier's refusal to extend credit to C & S and ISE's subsequent requirement of personal guarantees from the Greenes. The court relied on Restatement of Security Section 124 which provides that a creditor owes a limited duty of disclosure to a guarantor on a continuing guaranty at the inception of the relationship and during the course of the continuing guaranty. The duty arises if the following three conditions are met: 1) the creditor has reason to believe that those facts materially increase the risk beyond that which the surety intends to assume; 2) the creditor has reason to believe that the facts are unknown to the surety; and 3) the creditor has a reasonable opportunity to communicate the facts to the surety. Sumitomo Bank of California v. Iwasaki, 70 Cal.2d 81, 73 Cal. Rptr. 564, 447 P.2d 956, 965 (1968).
The trial court erred in relying on the Restatement and Iwasaki because Florida does not follow that reasoning. Our supreme court has held that with an absolute and unconditional guarantee "the creditor is not required to notify the guarantor of any dishonor," Chris Craft Industries, Inc. v. Van Valkenberg, 267 So.2d 642 (Fla. 1972). Further, our court has held that "under a continuing guaranty, in the *69 absence of an express contractual provision to the contrary.... the creditor has no obligation to notify the guarantor regarding its transaction with the principal debtor." Causeway Lumber Co., Inc. v. King, 502 So.2d 80 (Fla. 4th DCA 1987).
Most particularly, in the instant case by the provisions of the guaranty, Seay waived any notice of dishonor or of any matter affecting the guaranty:
Guarantor consents that, without notice to or further assent by Guarantor, the obligation of Borrower or of any other party for the liabilities hereby guaranteed may be renewed, extended, modified, prematured, or released by "ISE" as it may deem advisable and that any security or securities which "ISE" may hold may be exchanged, sold, released, or surrendered by it, as may deem advisable, without impairing or affecting the obligation of the Guarantor hereunder. Guarantor waives any and all notice of the acceptance of this guarantee, or of the creation, renewal, or accrual of any obligations of Borrower to "ISE" present or future, or of the reliance of "ISE" upon this guarantee... . Guarantor waives protest, presentment, demand for payment, notice of default, or non-payment, and notice of dishonor... .
The language makes clear that there was no duty on the part of ISE to notify Seay of the dishonor of credit by the supplier nor of the personal guarantees executed by the Greenes.
The very underpinning of contract law is the desire to bring certainty to commercial transactions. The contract between the parties is controlling on the issues presented in this case, and courts cannot impose duties upon contracting parties different from the terms agreed upon. As the Court said in Hamilton Construction v. Board of Public Instruction, "The parties selected the language of the contract. Finding it to be clear and unambiguous, we have no right  nor did the lower court  to give it a meaning other than that expressed in it. To hold otherwise would be to do violence to the most fundamental principle of contracts." Id. at 731.
For the foregoing reasons we reverse the judgment in favor of appellee and remand for entry of a judgment on the guaranty. As to the remaining issue on appeal as to the amount of the judgment against the Greenes on their guaranties, we affirm.
DELL and POLEN, JJ., concur.